**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| MARYBETH BOUDREAU and MICHAEL BOUDREAU, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiffs, Marybeth Boudreau and Michael Boudreau, by and through their undersigned counsel, sue Defendant, State Farm Fire and Casualty Company ("State Farm" or "Defendant"), and allege as follows:

## PARTIES, JURISDICTION, and VENUE

1.     Plaintiff, Marybeth Boudreau, is an individual residing at 127 Grand View Drive, Dedham, Hancock County, State of Maine.

2.     Plaintiff, Michael Boudreau, is an individual residing at 127 Grand View Drive, Dedham, Hancock County, State of Maine.

3.     Defendant, State Farm, is an Illinois corporation with a principal place of business at One State Farm Plaza, Bloomington, Illinois 61710. State Farm is a foreign insurance company licensed and authorized to do business in Maine.

4.     This action is brought pursuant to 28 U.S.C. § 1332. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs, and because the matter is between citizens of different states.

5.      The amount in controversy exceeds $75,000 because the amount of the insured claim that has not been paid by State Farm far exceeds $75,000.

6.      Venue is proper in this judicial district pursuant to the provisions of 28 U.S.C. § 1391(b)(2) because the claims arose in Dedham, Hancock County, Maine.

## FACTS COMMON TO ALL COUNTS

7.      State Farm issued a Homeowners Insurance Policy (Policy Number 19-BR-8785-3) (the "Policy"), which covered premises located at 127 Grand View Drive, Dedham, Maine ("the Property"). A true and accurate copy of the insurance policy is attached hereto as Exhibit A.

8.      The Policy Period included coverage for the period encompassing December 18, 2023 ("the Policy Period").

9.      Effective during the Policy Period, the named insureds on the Policy were Marybeth Boudreau and Michael Boudreau.

10.      Pursuant to the Policy, State Farm agreed to insure against direct loss to the Covered Property within the Policy Period, including losses caused by windstorm.

11.      Pursuant to the Policy, the Insureds (or their beneficiaries) agreed to promptly notify Defendant State Farm (or its agent) of the loss and protect the property from further damage.

12.      On or about December 18, 2023, the Covered Property sustained severe damage (the "Loss Event") from a powerful windstorm event, including but not limited to structural failures in the roof framing above a vaulted living room space, damage to multiple rafters, excessive deflections and potential failure in the rear exterior wall, and widespread interior damage.

13.      The Loss Event was a covered peril under the Policy, as it constituted direct physical loss to the dwelling caused by windstorm.

14.     Plaintiffs promptly reported the claim to State Farm on December 21, 2023. State Farm acknowledged the claim (Claim Number 19-60V0-09G) and conducted an initial inspection.

15.     On May 23, 2024, YA Engineering Services ("YAES") performed a review of the visible damage and issued a report concluding that the damage was caused by the December 18, 2023, windstorm and recommending further structural engineering involvement due to the home's complex design. A true and accurate copy of the YAES report is attached hereto as Exhibit B.

16.     Plaintiffs submitted an estimate from Omega Adjusting in the amount of $797,865.58, detailing the necessary repairs, including complete removal and replacement of the dwelling roof shingles and components, as well as expanded interior structural repairs to address the wind-induced damage. A true and accurate copy of this estimate is attached hereto as Exhibit C.

17.     State Farm issued its own estimate, which limited coverage to partial repairs, including only the removal and replacement of 37 shingles and minimal interior work, thereby substantially understating the scope and amount of the covered loss.

18.     To minimize the loss, Plaintiffs took reasonable steps to protect the Covered Property from further damage, including securing the site and preventing additional exposure to the elements following the Loss Event.

19.     On May 8, 2025, Haley Ward, Inc. ("Haley Ward"), a licensed engineering firm, conducted a preliminary structural assessment of the Covered Property. Haley Ward's report, dated May 21, 2025 (the "Haley Ward Report"), confirmed the YAES findings. The Haley Ward Report further included a preliminary shear wall analysis per ASCE 7-16, the 2018 National Design Specification for Wood Construction, and the 2021 Special Design Provisions for Wind and Seismic (SDPWS), identifying minimum required sheathing, nailing patterns, holdowns, end

posts, and reinforcements such as helical piles. It concluded that the damage was "likely caused by the aforementioned windstorm" and recommended extensive repairs to prevent recurrence. A true and accurate copy of the Haley Ward Report is attached hereto as Exhibit D.

20.    Despite the engineering evidence from YAES and Haley Ward establishing both causation (windstorm as the direct cause) and the scope of covered repairs (including full structural reinforcements), State Farm refused to adjust the claim accordingly, maintaining its limited estimate and denying coverage for the full extent of the wind-induced structural damages.

21.    On or about November 2025, Plaintiffs demanded appraisal pursuant to the Policy's appraisal provision (Section I – Conditions, ¶ 4) to resolve the dispute over the amount of loss. A true and accurate copy of this correspondence is attached hereto as Exhibit E.

22.    On November 7, 2025, State Farm responded in writing, refusing to participate in the appraisal process. State Farm falsely characterized the dispute as one involving "questions of coverage" rather than the "amount of loss," citing differences in repair scope as contractual coverage issues outside the appraisers' authority. A true and accurate copy of State Farm's November 7, 2025, letter is attached hereto as Exhibit F.

23.    State Farm's refusal was pretextual and in bad faith, as the engineering reports conclusively establish that the damages stem from the covered windstorm peril. The dispute centers on the quantum of loss: the reasonable cost to repair or replace the damaged property. State Farm's actions violated the Policy's appraisal provision, which mandates appraisal for disagreements on the "amount of loss" after compliance with post-loss duties.

24.    As a result of Defendant's breach of the insurance contract, it has become necessary for Plaintiffs to incur and become obligated for attorneys' fees and costs in connection with the prosecution of this action.

25.     All conditions precedent to the relief requested herein have been met, waived, or satisfied.

26.     Plaintiffs have done and performed all those matters and things properly required of it under the insurance policy or, alternatively, have been excused from performance by the acts, representations, and/or conduct of Defendant.

## COUNT I: BREACH OF CONTRACT

27.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 26 above.

28.     State Farm owed Plaintiffs a contractual duty under the Policy to pay for all covered direct physical losses caused by windstorm, including the full cost of repairs or replacement.

29.     State Farm breached the Policy by: (a) failing to indemnify Plaintiffs for the full amount of the covered loss; (b) issuing a grossly inadequate estimate that understated the scope of wind-induced damages; (c) refusing to participate in the contractually mandated appraisal process; and (d) denying coverage for necessary structural repairs directly caused by the covered Loss Event.

30.     As a direct result of Defendant's breach of insurance contract, Plaintiff has been damaged and continues to suffer damage and loss.

## COUNT II: VIOLATIONS OF 24-A M.R.S.A. § 2436

31.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 26 above.

32.     The actions of State Farm constitute a violation of Maine's late payment statute, 24-A M.R.S.A. § 2436, Interest on Overdue Payments.

33.    Plaintiffs have provided all necessary information requested by State Farm for it to adjust the loss and ascertain the amount of the loss.

34.    More than thirty days have transpired since Plaintiffs provided the requested information to State Farm, but State Farm has not paid the remaining portion of the claim.

35.    Pursuant to 24-A M.R.S.A. § 2436, Plaintiffs are entitled to interest on the overdue claim at the rate of 1 1/2% per month following thirty days from Plaintiffs' submission of requested information to State Farm. In addition, Plaintiffs are entitled to reasonable attorney's fees for advising and representing them in connection with the overdue claim.

## COUNT III — VIOLATIONS OF 24-A M.R.S.A. § 2436-A

36.    Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 26 above.

37.    The actions of State Farm constitute a violation of Maine's Unfair Claims Settlement Practices Act, 24-A M.R.S.A. § 2436-A.

38.    The actions of State Farm specifically violate Subsections A, B, and E of Paragraph 1 of 24-A M.R.S.A. § 2436-A.

39.    As a result of State Farm's violation of Maine's Unfair Claims Settlement Practices Act, Plaintiffs have been injured and are entitled to damages, including, but not limited to, costs and disbursements, reasonable attorneys' fees, and interest on damages at the rate of 1 1/2% per month.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Marybeth Boudreau and Michael Boudreau, pray that this Court:

A.    Order appraisal under the Policy's terms;

B.     Award compensatory damages in an amount exceeding $797,865.58, to be determined either by appraisal or by trial, including the full cost of repairs, loss of use, and consequential damages;

C.     Award prejudgment and post-judgment interest at the statutory rate;

D.     Award attorney's fees, costs, and disbursements;

F.     Grant such other and further relief as the Court deems just and proper.

MARYBETH and MICHAEL BOUDREAU,

By their attorney,

Dated:  December 12, 2025

/s/ Seth W. Brewster
Seth W. Brewster, Bar No. 3741
Alfred Morrow, Bar No. 6497
*Attorneys for Plaintiffs*

JENSEN BAIRD
Ten Free Street
P.O. Box 4510
Portland, ME 04112
(207) 775-7271
sbrewster@jensenbaird.com
amorrow@jensenbaird.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 12, 2025, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to the parties registered with the CM/ECF system.

Dated:  December 12, 2025                     /s/ Alfred J. F. Morrow III
                                                      Alfred J. F. Morrow