UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MARYBETH BOUDREAU, et al., | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | 1:25-cv-00619-JCN |
| | ) | |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) | |
| | ) | |
| Defendant | ) | |

## ORDER ON MOTION TO COMPEL APPRAISAL AND STAY LITIGATION

Plaintiffs allege that Defendant breached the terms of a homeowners' insurance policy and violated its statutory obligations in connection with Plaintiffs' insurance claim. (Complaint, ECF No. 1.) Plaintiffs ask the Court to compel Defendant's participation in the policy's appraisal process and stay this action pending completion of the appraisal. (Motion, ECF No. 20.) Defendant opposes the motion. (Opp'n, ECF No. 21.)

Following a review of the record and after consideration of the parties' arguments, the Court denies the motion, subject to further discussion between the Court and the parties as explained below.

### BACKGROUND[1]

Defendant issued a homeowners insurance policy that covered Plaintiffs' residence located in Dedham, Maine (the Property). (Compl. ¶¶ 2, 7.) During the policy period,

[1] These facts are derived from the allegations in the complaint, which are accepted as true for purposes of the motion, as well as the documents attached to the complaint, as the parties do not dispute the authenticity of the documents and the documents appear to be central to Plaintiffs' claims.

Plaintiffs were the named insureds on the policy. (*Id.* ¶ 9.) Under the policy, Defendant agreed to pay for certain losses to the Property, including losses caused by a windstorm. (Policy at 12-13, ECF No. 1-1.)

On December 18, 2023, during the period covered by the policy, the Property sustained damage in a windstorm. (Compl. ¶¶ 8, 12.) Plaintiffs reported a claim under the policy, and Defendant acknowledged the claim. (*Id.* ¶ 14.) Plaintiffs submitted an estimate of damages; Defendant issued an estimate that differed from Plaintiffs' estimate. (Compl. ¶¶ 16-17.)

In May 2024, at Defendant's request, YA Engineering Services, Inc. (YAES) visited the Property to determine the cause of the reported interior damage to the Property. (YAES Report at 1, ECF No. 1-2.) In its subsequent report, YAES did not reach a definitive conclusion that the December 18, 2023, windstorm caused the reported interior damage: it noted that additional investigation would be required to determine whether certain drywall defects were due to inadequate bracing of exterior walls. (*Id.* at 17.) YAES further found that in the absence of additional information, it was likely that certain drywall cracks were due to excessive movement of exterior walls caused by high wind, which occurred on December 18, 2023, and on at least two previous occasions. (*Id.*)

In May 2025, at Plaintiffs' request, a licensed professional engineer from Haley Ward (Ward) inspected the Property "to assess the apparent structural deficiencies" in the Property "made apparent after a wind event on December 18, 2023." (Ward Report at 1, ECF No. 1-4.) Ward concluded that a structural engineer should have been involved in the construction of the Property and observed two key structural deficiencies: a wall in the

living room that was not constructed properly and insufficient bracing of wall lines throughout the building. (*Id.* at 1-2.) Ward further found that "the damage reported throughout the home was likely caused by the aforementioned windstorm" and recommended reinforcement of the structure of the Property to prevent similar damage in the future. (*Id.* at 3.)

By letter dated October 31, 2025, Plaintiffs demanded that the amount of the loss be set by appraisal under the appraisal provision of the policy. (Demand Letter, ECF No. 1-5.) In pertinent part, the policy states:

> 4. Appraisal. If you and we fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal. . . . A demand for appraisal must be in writing. You must comply with SECTION I – CONDITIONS, Your Duties After Loss before making a demand for appraisal. At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.
>
> a. Each party will select a competent, disinterested appraiser and notify the other party of the appraiser's identity within 20 days of receipt of the written demand for appraisal.
>
> b. The appraisers will then attempt to set the amount of the loss of each item in dispute as specified by each party, and jointly submit to each party a written report of agreement signed by them. In all instances the written report of agreement will be itemized and state separately the actual cash value, replacement cost and if applicable, the market value of each item in dispute.
>
> The written report of agreement will set the amount of the loss of each item in dispute and will be binding upon you and us.

(Policy at 22.) The policy provides that if the two appraisers are unable to agree on the amount of the loss, they will select an umpire and submit their differences to the umpire.

(*Id.*) The appraisal clause also identifies the qualifications for any appraiser or umpire, which include licensing or certification as an engineer, architect, adjuster, or contractor with background that would enable an informed estimate of the type of property damage in dispute. (*Id.*)

Under the appraisal clause, the parties to the policy "do not waive any rights by demanding or submitting to an appraisal, and retain all contractual rights to determine if coverage applies to each item in dispute." (*Id.*) The policy provides that appraisal "is only available to determine the amount of the loss of each item in dispute" and is not available to determine: "(1) any other questions of fact; (2) questions of law; (3) questions of coverage; [or] (4) other contractual issues." (*Id.* at 23.) The policy further states that a "party may not demand appraisal after that party brings suit or action against the other party relating to the amount of loss." (*Id.*)

By letter dated November 7, 2025, Defendant acknowledged receipt of Plaintiffs' demand for an appraisal. (State Farm Letter, ECF No. 1-6.) Citing the policy, Defendant advised that appraisal was only available to determine the cost to repair items covered by the policy and was not available to resolve questions of coverage. (*Id.*) Defendant further asserted that the differences between the parties' estimates represented questions of coverage under the policy, not differences regarding the cost to repair covered items. (*Id.*)

Plaintiffs then commenced this action for breach of contract and other related relief, asserting, among other things, that Defendant breached the insurance policy by failing to indemnify Plaintiffs for their loss and by refusing to participate in the appraisal process. (*See* Compl. ¶ 29.)

## DISCUSSION

Defendant contends that it is not obligated to participate in the appraisal process because the parties' disagreement is not about the "amount of the loss," and is therefore outside the scope of the appraisal clause.[2] More specifically, Defendant asserts that the parties "disagree about the scope of the damage caused by the December 18, 2023, wind event, including what portion of Plaintiffs' claimed repairs to the home are attributable to prior wind events, pre-existing construction defects, faulty workmanship, inadequate bracing, and code deficiencies—all excluded causes of loss under the policy." (Opp'n at 1-2.) According to Defendant, the parties' disagreement is about coverage under the policy and not about the cost to repair a particular item or items.

Plaintiffs contend that the parties' disagreement is within the scope of the appraisal clause as it concerns the "amount of the loss"—"e.g., whether repairs require full structural reinforcements (as Plaintiffs contend) or limited patchwork (as State Farm asserts)." (Motion at 4.) Plaintiffs further argue that Defendant could have drafted the appraisal clause to exclude disputes about causation, but did not do so, and that the clause "is not limited to pricing undisputed repairs." (Reply to Opp'n at 4, ECF No. 22.)

"Virtually every property insurance policy . . . contains a provision specifying appraisal as a means of resolving disputes about the amount of loss for a covered claim."

---

[2] Defendant also argues that the motion should be denied because the policy "specifically provides that appraisal cannot occur after a party files suit." (Opp'n at 1.) In pertinent part, the policy provides that "A party may not demand appraisal after that party brings suit or action against the other party relating to the amount of loss." (Policy at 23.) The record reflects that Plaintiffs demanded an appraisal before bringing this action. Given the pre-suit demand, the policy provision cited by Defendant does not prevent Plaintiffs from asking the Court to compel Defendant's participation in the appraisal process.

5 New Appleman on Insurance § 47.06 (Law Library ed. 2026). Although such appraisal clauses are common, disagreements arise, as in this case, regarding the scope of such clauses – i.e., which disputes are subject to appraisal, and which disputes must be resolved in court. *See id.* As other authorities have recognized, the "mere fact that there is a disagreement does not in itself show that the [appraisal] clause is applicable. It must be shown that the disagreement is in regard to a matter within the scope of the [appraisal] clause." 15 Couch on Insurance § 211:43 (3d ed. June 2026 Update).

Whether a clause providing for appraisal of the "amount of the loss" includes within its scope disputes about causation is an issue on which courts have differed. *See* Ashley Smith, Property Insurance Appraisal: Is Determining Causation Essential to Evaluating the Amount of Loss?, 2012 J. Disp. Resol. 591, 595 n.32 & App'x (2012) (collecting cases); *see also BonBeck Parker, LLC v. Travelers Indem. Co. of Am.*, 14 F.4th 1169, 1178 n.6 (10th Cir. 2021) (recognizing courts are not in consensus on this issue and citing case law). In this diversity action, the dispute regarding the application of the appraisal clause is governed by Maine law. *See Alfiero v. MetLife Auto & Home Ins. Agency, Inc.*, No. 2:16-CV-513-DBH, 2017 WL 2804902 (D. Me. June 28, 2017) (evaluating appraisal clause in insurance policy issued in Maine pursuant to Maine law).

The Maine Law Court once stated "in passing," in a matter concerning a determination of the amount of loss by referees under an insurance policy, that the "right of the insured to recover the loss is not submitted to the referees; only the amount of the damages." *Oakes v. Franklin Fire Ins. Co.*, 120 A. 53, 54 (Me. 1923). The Law Court, however, has apparently not addressed the question directly. This Court must therefore

assess how the Law Court would likely resolve the scope of the appraisal clause at issue here. *See BonBeck Parker*, 14 F.4th at 1176-78 (predicting how Colorado Supreme Court would address this issue).[3]

Under Maine law, an insurance policy is a contract and is generally construed in accordance with its plain meaning, like any other contract. *See Dunton v. Westchester Fire Ins. Co.*, 71 A. 1037, 1039-40 (Me. 1908) (construing arbitration clause in insurance policy like any other contract provision and discerning parties' intent by reference to the terms used in the arbitration clause); *see also Kelley v. N. E. Ins. Co.*, 168 A.3d 779, 781 (Me. 2017) ("If the language of an insurance policy is unambiguous, we interpret it in accordance with its plain meaning, but we construe ambiguous policy language strictly against the insurance company and liberally in favor of the policyholder.") (quotation marks omitted). The language of the policy is viewed "from the perspective of an average person untrained in either the law or the insurance field in light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured." *Kelley*, 168 A.3d at 781 (quotation marks omitted).

---

[3] This Court's prior decisions regarding the application of an appraisal clause demonstrate that the nature of the claim will inform the Court's assessment. In one case, this Court concluded that the appraisal process was required and rejected an insured's efforts to proceed in a lawsuit to recover on a claim under her policy where the insured failed to participate in the appraisal process without a valid reason. *Alfiero*, 2017 WL 2804902 at *3. In another case, this Court concluded that appraisal is not required where the appraisal clause does not apply to, and would not resolve, the dispute between the parties. *Thurston v. Progressive Cas. Ins. Co.*, No. 1:22-cv-00375-NT, 2023 WL 4083232, at *5-6 (D. Me. June 20, 2023) (concluding that insured's suit was not barred by his failure to participate in appraisal upon insurer's demand because appraisal clause did not apply to the parties' dispute regarding insurer's application of an adjustment to insured's claim).

Here, the plain meaning of the terms of the appraisal clause and other provisions of the policy governs whether the parties' dispute must be determined by appraisal. Under the policy, a demand for appraisal must be accompanied by an itemized documentation of a specific dispute as to the amount of the loss: appraisal "is only available to determine the amount of the loss of each item in dispute" and is not available to determine: "(1) any other questions of fact; (2) questions of law; (3) questions of coverage; [or] (4) other contractual issues." (Policy at 23.) "The problem, of course, is that drawing lines between 'coverage,' 'causation,' and 'amount of loss' is not always clear cut in actual practice." *LeBlanc v. Travelers Home & Marine Ins. Co.*, No. CIV-10-00503-HE, 2011 WL 1107126, at *5 (W.D. Okla. Mar. 23, 2011). The line-drawing challenge is evident in this case where Defendant contends that at least some of the claimed damage is not covered because it was caused by a peril or perils that are not within coverage.

The appraisal clause tasks the appraisers with setting "the amount of the loss of each item in dispute," and specifically provides that the appraisers' "written report of agreement will be itemized and state separately the actual cash value, replacement cost, and if applicable, the market value of each item in dispute." (Policy at 22.) This language suggests that the appraisal process applies where the parties might agree on the extent of the damage but disagree on the cost to remediate the damage.

Further, as noted above, the policy also provides that the parties "do not waive any rights by demanding or submitting to an appraisal, and retain all contractual rights to determine if coverage applies to each item in dispute." (Policy at 22.) This language confirms that a coverage challenge is outside the appraisal process, regardless of the reason

for the challenge.[4] This language also suggests that in some circumstances, a party may request the appraisal process to resolve a cost to repair dispute, while coverage disputes are resolved through litigation.

Under the policy, therefore, Plaintiffs may invoke the appraisal process for each item for which the parties dispute the cost of repair assuming that the damage to the item is covered by the policy. The appraisal process, however, does not govern the determination of whether the damage to the item was covered by the policy. While the current record is limited, it appears that the parties' dispute might involve some disagreements regarding (a) the cost necessary to repair certain damage and (b) whether some of the claimed losses were caused by a covered peril or by other non-covered perils.

Here, because the Court cannot discern on the current record the extent to which any cost to repair disputes can be resolved separate from the coverage disputes, the Court does not believe that an order directing the parties to participate in the appraisal process and staying this matter until completion of the appraisal process is appropriate.

## CONCLUSION

Following a review of the record, including the applicable insurance policy, and after consideration of the parties' arguments, for the reasons discussed herein, the Court denies Plaintiffs' motion to compel participation in the appraisal process and to stay the case. The Court, however, will convene a conference with the parties to discuss the future

[4] In the Court's view, a coverage dispute outside the scope of the appraisal clause could involve a causation argument (e.g., whether the damage in question was caused by a non-covered peril).

course of the case, including whether under the alleged facts there are any cost of repair issues that can be resolved separate from the coverage issues.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 4th day of September, 2026.